UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RONALD ODELL KING, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:19-cv-01923-AMM-JHE |
| CO MCLEMORE, et al., | ) ) ) |
| Defendants. | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

The plaintiff has filed a *pro se* complaint seeking monetary damages pursuant to 42 U.S.C. § 1983 for violations of his civil rights. (Doc. 1). The plaintiff names the following defendants in the complaint: Officer Zackery McLemore and Officer Keller Speaks, (*id.* at 2), and seeks compensatory damages. (*Id.* at 5). In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

**I. Procedural History**

On December 12, 2019, the undersigned entered an Order for Special Report directing the Clerk to forward copies of the complaint to each of the named defendants and directing the defendants to file a special report addressing the plaintiff's factual allegations. (Doc. 6). The undersigned advised the defendants that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, the court would consider it as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (*Id.*).

On April 9, 2020, the defendants filed a special report, supplemented by affidavits and/or other evidence. (Doc. 15). On May 11, 2020, the undersigned notified the parties that the court would construe the special report as a motion for summary judgment and notified the plaintiff that

he had 21 days to respond to the motion for summary judgment by filing affidavits or other material. (Doc. 16). The undersigned also advised the plaintiff of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. (*Id.*). *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). On May 18, 2020, the plaintiff filed a motion to dismiss the defendants' affidavits (doc. 17) and a motion for discovery (doc. 18). On June 4, 2020, the plaintiff filed an affidavit and additional material related to the incident. (Doc. 20). On August 31, 2020, the plaintiff filed a motion for an evidentiary hearing. (Doc. 22).

This matter is now before the court on the defendants' motion for summary judgment, the plaintiff's motion to dismiss the defendants' affidavits, and the plaintiff's affidavit and additional material, which the court construes as a response to the motion for summary judgment.

## II. Standard of Review

Because the court has construed the defendants' special report as a motion for summary judgment, Fed. R. Civ. P. 56 governs the resolution of the motion. Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532 (citations omitted).

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment.  *See Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)).  Additionally, because the plaintiff is *pro se*, the court must construe the complaint more liberally than it would pleadings drafted by lawyers.  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).  A *pro se* pleading "is held to a less stringent standard than a pleading drafted by an attorney" and is liberally construed.  *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

### III. Summary Judgment Facts[1]

The plaintiff is an inmate currently housed at Fountain Correctional Facility in Atmore, Alabama. (Doc. 23).  At the time of the incident that is the subject of the plaintiff's complaint, the State housed him at W.E. Donaldson Correctional Facility in Bessemer, Alabama. (Doc. 1 at 2, 4).  On January 2, 2020, the plaintiff notified the court that the State had transferred him to Limestone Correctional Facility after he wrote the warden and told her about the incident. (Doc. 7).

---

[1] The following facts are undisputed or, if disputed, taken in a light most favorable to the non-moving party. *Chapman,* 229 F.3d at 1023.  Factual disputes are addressed in footnote form.

3

Plaintiff alleges on August 13, 2019, at approximately 3:10 p.m., Officer McLemore and Officer Speaks were escorting him and other inmates from the medical unit to their cells. (*Id.* at 4–5, 11).[2] Plaintiff alleges Officer O'Neal began to put him in his cell, but Speaks "call[ed] [O'Neal] down and said some[thing] in his ear." (*Id.* at 11). The plaintiff asserts that the defendants intentionally placed the plaintiff in his cell after the other inmates so no one could witness their actions. (*Id.*).[3] In his affidavit, the plaintiff explains that Officer O'Neal attempted to place the plaintiff in his cell, but "when we made it on top Officer McLemore call[ed] [O'Neal] back down stairs and told him to wait." (Doc. 20 at 1). After the other inmates were locked down, the plaintiff states "they all came to [his] cell." (*Id.*).[4] Speaks instructed the plaintiff to step into his cell and face the wall while they shut the cell door. (*Id.;* Doc. 1 at 11). Speaks told the plaintiff to "stay facing straight" and then hit him in the side of his face. (Doc. 1 at 11).

In his affidavit, the plaintiff stated that after facing the wall, he assumed the defendants were mad that they "haven't found nothing," because Speaks then told the plaintiff to face the other wall. (*Id.*). Speaks asked the plaintiff, "did [he] put some[thing] in the door," to which the

---

[2] In his affidavit, the plaintiff stated that an officer who goes by the name "Big G" also escorted him and the other inmates back to their cells. (Doc. 20 at 1).

[3] McLemore stated he was placing inmates back in their cells in numerical order. (Doc. 15-4 at 1). As McLemore opened the plaintiff's cell, he "observed an obstruction in the locking mechanism of the door" and attempted to remove the material from the door lock. (*Id.*). As he did so, the plaintiff became irate, yelled at McLemore to "get the fuck away from [his] cell," and charged toward McLemore. (*Id.*). Because the plaintiff refused McLemore's order to stop, McLemore administered a one second burst of mace to the plaintiff's face. (*Id.*). The plaintiff attempted to "head butt" McLemore, who then "performed a transport assist take down to the front." (*Id.*). Once on the floor, the plaintiff complied with orders to cease his behavior and was taken to the infirmary. (*Id*. at 1–2). Speaks stated he witnessed the plaintiff "rushing aggressively towards Officer McLemore," and assisted in getting the plaintiff to his feet after McLemore's take down. (Doc. 15-3). Speaks stated, "No other force was used on my behalf." (*Id.*). The plaintiff states in his affidavit that he "read they [sic] affidavit and the incident report [and] it showed different statement." (Doc. 20 at 1).

[4] In his Motion to Dismiss Defendants' Affidavits, the plaintiff states Speaks, McLemore, O'Neal and "Big G" came to his cell. (Doc. 17 at 1).

4

plaintiff replied, "no it was there before I move[d] in the cell." (Doc. 20 at 1). Without provocation, Speaks hit the plaintiff on the right side of his face. (*Id.*). The plaintiff alleges McLemore hit the plaintiff in his back, causing "a burst to come" and a bruise on his back. (Doc. 1 at 5, 11; Doc. 20 at 1). The plaintiff states "it made it hard for me to get up. Lt. Waltson had to pull me up because when I [fell] I couldn't get up on my own." (Doc. 20 at 1).[5] The plaintiff further states they "start[ed] jumping on me real bad," causing "blood to go everywhere." (Doc. 1 at 11). The plaintiff was then taken into the hallway where the defendants "jumped on [him] again." (*Id.*; *see also* Doc. 17 at 1). Speaks then hit the plaintiff in the right eye, causing his eye to bleed. (Doc. 1 at 5). They took him to the medical unit, where staff took photographs of his injuries. (*Id.* at 5, 11).

According to the incident report, Speaks and Officer Roderick Gadson escorted the plaintiff to the infirmary, and McLemore called Lt. Carl Sanders to report to the infirmary. (Doc. 15-1 at 2). Gadson informed Sanders of the incident, and Sanders reported the incident to Captain Shannon Caldwell and Warden III Gwendolyn Givens. (*Id.*). At approximately 3:20 p.m., the plaintiff was decontaminated and evaluated by Nurse Amber Hicks. (*Id.*). On the body chart, the plaintiff stated, "Just put my marks on their [sic], I don't have no statement." (*Id.* at 6). The chart reflects that the "whites of [plaintiff's] eyes [were] red," and he had a small laceration to his right eyebrow. (*Id.*). Additional notations indicate the plaintiff refused to answer any details about the injury, and there was "small bloody drainage" from the laceration. (Doc. 15-2 at 38). On the inmate written statement, the plaintiff stated, "[t]hey took me out for sick call and when I came back they jump[ed] on me." (Doc. 15-1 at 7). Due to plaintiff's complaints of back pain, an x-ray

---

[5] The plaintiff stated that although not reflected in the medical record, a picture was taken which supports his statements. (Doc. 20 at 1).

was scheduled the next day, which showed "no acute osseous abnormality of the thoracic spine." (Doc. 15-2 at 39).

The plaintiff was placed in restrictive housing and disciplined for "Assault on an ADOC Official." (Doc. 15-1 at 2).

Plaintiff seeks $30,000 in compensatory damages. (Doc. 1 at 5).

## IV. Analysis

### A. Official Capacity Claims

To the extent the plaintiff asserts constitutional claims against Officer Speaks and Officer McLemore in their official capacities for money damages, the plaintiff's claims are due to be dismissed under the doctrine of sovereign immunity. The Eleventh Amendment to the United States Constitution bars claims pursuant to 42 U.S.C. § 1983 against the state or an agency of the state. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Likewise, Eleventh Amendment immunity also bars claims for money damages against officials and employees of state entities sued in their official capacities. *Id*. at 101.

Based on the foregoing, the court should grant the defendants' motion for summary judgment on plaintiff's official capacity claims for monetary relief.

### B. Individual Capacity Claims

The defendants also move for summary judgment on the plaintiff's Eighth Amendment excessive force claim against them in their individual capacities.

The plaintiff's excessive force allegations are analyzed under the standard set forth by the United States Supreme Court in *Hudson v. McMillian*, 503 U.S. 1 (1992) and *Whitley v. Albers*, 475 U.S. 312 (1986). *See Campbell v. Sikes*, 169 F.3d 1353, 1374–75 (11th Cir. 1999). In *Hudson*, the Supreme Court held that in assessing an inmate's excessive force claim, "the core judicial

inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7.

With these principles in mind, the Supreme Court set out certain factors that should be considered when evaluating whether the force used was excessive. These factors include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible official; (4) any efforts to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate. *Whitley*, 475 U.S. at 321.

In applying the foregoing factors to the facts of a particular case, the Supreme Court has instructed:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind."

*Hudson*, 503 U.S. at 9 (citations omitted).

To create a genuine issue of material fact, the plaintiff must come forward with evidence from which a reasonable inference can be drawn that the defendant acted maliciously and sadistically. Generally, courts " do not second-guess prison officials on matters that they are better equipped to handle under the exigencies of an internal disturbance." *Wilson v. Blankenship*, 163 F.3d 1284, 1295 (11th Cir. 1998).

The defendants argue that the plaintiff's injuries "fail to meet the objective standard" and he "appears to have suffered nothing more than a small laceration." (Doc. 15 at 12–13). Based on the medical records, the plaintiff's injuries included a small laceration to his right eyebrow, resulting in bloody drainage from the laceration. (Doc. 15-1 at 6; 15-2 at 38). The plaintiff also complained of back pain and received an x-ray, which showed no acute abnormality of his spine.

7


(Doc. 15-2 at 39). However, the plaintiff alleged feeling "a burst" when McLemore hit him in the back and suffering a bruise on his back. (Doc. 1 at 5, 11; Doc. 20 at 1). Plaintiff states that after the defendants hit him, "Lt. Waltson had to pull me up because . . . I couldn't get up on my own." (Doc. 20 at 1). The plaintiff alleged that defendants "jumped" on him, causing "blood to go everywhere." (Doc. 1 at 11; Doc. 17 at 1). Finally, the plaintiff argues that medical staff took pictures of his injuries, but no pictures have been included with the medical record. (Doc. 1 at 5, 11; Doc. 20 at 1). Construing the facts in a light most favorable to the plaintiff, and applying the standards set forth above, the plaintiff has created a genuine issue of material fact as to whether he suffered more than a *de minimis* injury from the encounter with the defendants.

Defendants also argue that the plaintiff cannot show they acted maliciously or sadistically to cause harm because "inmate King was the physical aggressor during a security/safety check, where Officer McLemore was attempting to dislodge a blocking mechanism in inmate King's cell door." (Doc. 15 at 14). Thus, the defendants argue, "in response to inmate King's physical aggression toward him, Officer McLemore acted 'in a good-faith effort to maintain or restore discipline,' and not 'maliciously or sadistically to cause harm.'" (*Id.*) (citation omitted). However, the parties have presented very different versions of the facts.

Plaintiff states that on the day of the incident the defendants were escorting him and other inmates from the medical unit to their cells, when Officer O'Neal began to put him in his cell. (Doc. 1 at 4–5, 11). However, Speaks interrupted O'Neal by calling him away and told him to wait. (*Id.* at 11; Doc. 20 at 1). After the other inmates were locked down, plaintiff states that all the guards came to his cell and Speaks told him to step in and face the wall. (*Id.*). Although plaintiff alleged in his complaint that Speaks then hit him in the face, the plaintiff clarified in his affidavit that he "guess[ed] they [were] mad they haven't found nothing" as Speaks then told him

to face the other wall. (Doc. 20 at 1). Speaks asked the plaintiff if he put something in the door, and the plaintiff replied no it was there before he occupied the cell. (*Id.*). It was then that Speaks, unprovoked, hit the plaintiff on the right side of his face and eye. (*Id.*). Plaintiff also alleges McLemore hit him in his back. (*Id.*). Plaintiff further alleges the defendants "jump[ed] on [him]" in his cell and again in the hallway. (Doc. 1 at 11; Doc. 17 at 1). Furthermore, the plaintiff stated in his written statement taken the day of the incident that "[t]hey took me out for sick call and when I came back they jump[ed] on me." (Doc. 15-1 at 7).

Officer McLemore states that on the day of the incident, he was placing inmates back in their cells in numerical order. (Doc. 15-4 at 1). As McLemore opened the plaintiff's cell, he saw an obstruction in the cell door and attempted to remove it. (*Id.*). As he was doing so, the plaintiff became irate, yelled profanities at McLemore, and charged toward him. (*Id.*). Because plaintiff refused McLemore's order to stop, McLemore administered a one second burst of mace to plaintiff's face,[6] but the plaintiff attempted to head butt McLemore. (*Id.*). At that point, McLemore took the plaintiff down to the floor. (*Id.*). Speaks states that he merely assisted in getting the plaintiff to his feet after McLemore's take down and used no force on the plaintiff. (Doc. 15-3).

Although the defendants' affidavits and incident report reflect their version of events, the plaintiff states in his affidavit that he has read the defendants' affidavits and incident report, but they show "different statement[s]." (Doc. 20 at 1).[7] Because of the conflicting facts, and drawing

---

[6] The plaintiff's factual rendition does not mention the use of mace by the defendants.

[7] Notably, the plaintiff filed a notice of change of address on January 2, 2020, in which he states that he wrote the warden and told her "two of the office[rs] at Donaldson had jump on me and they was still coming around me." (Doc. 7). The warden told him she would talk to his classification worker about the situation and would transfer him to a safe place. (*Id.*).

9

all reasonable inferences against the moving party, *see Chapman,* 229 F.3d at 1023, a genuine issue of fact exists as to the need for force by the defendants in this instance.

Defendants argue they are entitled to qualified immunity with respect to the plaintiff's excessive force claims. (Doc. 15 at 18–19). "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quotation marks and citation omitted). To obtain qualified immunity, the government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quotation marks and citations omitted). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id*. The plaintiff must show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) (footnote omitted).

There is no dispute that the defendants were acting within the scope of their discretionary authority when they allegedly used excessive force against the plaintiff on August 13, 2019. Because there is a question of fact concerning whether the defendants used excessive force against the plaintiff, they are not entitled to qualified immunity on the plaintiff's excessive force claims against them. Specifically,

> a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force "maliciously and sadistically to cause harm" is clearly established to be a violation of the Constitution . . . There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation. The only question, then, is whether the

> plaintiff has alleged facts sufficient to survive a . . . motion for summary judgment. If he has done so, that is the end of the inquiry.

*Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (citing *Johnson v. Breeden*, 280 F.3d 1308 (11th Cir. 2002)).[8]

Accordingly, since the plaintiff has alleged facts sufficient to survive a motion for summary judgment concerning his Eighth Amendment claim against the defendants for excessive force, the defendants' motion for summary judgment on the basis of qualified immunity is due to be denied.

## V. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** the court **GRANT** the motion for summary judgment in part and **DENY** it in part. Specifically, the undersigned **RECOMMENDS** the court **GRANT** the defendants' motion for summary judgment on the plaintiff's claims against them in their official capacities **and DENY** the defendants' motion for summary judgment on the plaintiff's excessive force claims against them in their individual capacities.

## VI. Notice of Right to Object

Any party may file specific written objections to this report and recommendation. A party must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting. Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present

---

[8] Although the Eleventh Circuit has recently held that subsequent decisions of the United States Supreme Court undermine the qualified immunity exception articulated in *Skrtich* "to the point of abrogation" in the Fourteenth Amendment excessive force context, it reaffirmed that the exception "continues to apply to Eighth Amendment claims." *Patel v. Lanier County Georgia*, 969 F.3d 1173, 1185-86 (11th Cir. 2020).

additional evidence, or repeat legal arguments. An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order. In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations. The district judge must conduct a hearing if required by law. Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence. Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record. The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may only appeal from a final judgment entered by a district judge.

DONE this 22nd day of January, 2021.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

13